

F I L E

NOV 2 9 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| CHIRAG SHAH,<br>Plaintiff<br><br>v.<br><br>SOUTHWEST AIRLINES, A Texas<br>Corporation, and DOES, 1 through 25,<br>inclusive<br>Defendant(s), | Case No. ] : 13CV1481   AJT/JFA<br><br>**COMPLAINT AND DEMAND FOR JURY<br>TRIAL** |

## COMPLAINT

**COMES NOW** Plaintiff, by and through undersigned counsel, complaining of Defendant, and hereby allege and say the following:

## PRELIMINARY STATEMENT

1. On April 15, 2013, Plaintiff Chirag Shah ("Mr. Shah"), an expert on Information Technology Security with security clearances from the Department of Homeland Security (DHS) and the United States Customs and Border Protection (CBP), was confronted with blatant discrimination when Defendant Southwest Airlines and its employees removed him from their flight and refused his reentry.

2. Given that Plaintiff passed through Washington Dulles Airport's security checkpoint and that the Transportation Security Administration (TSA) determined that Plaintiff was not a safety

concern, Southwest Airlines cannot make any plausible claim that defendant posed a security

risk on the date of this incident. Indeed, any notion that Plaintiff was a security risk is belied by

the fact that Plaintiff has a security clearance from DHS and has dedicated his career to ensuring

the safety of US government's information technology systems.

3.     Defendant removed and excluded Mr. Shah from their flight due to his physical

appearance. Mr. Shah is visibly South Asian in origin. Defendant unlawfully relied upon his

race, national origin, ethnicity and perceived religion to conclude that he was a security threat.

Defendant's bigotry is further confirmed by the fact that another South Asian passenger was also

removed and excluded from the same flight despite the fact that he was also cleared to fly by

TSA.

## THE PARTIES

4.     Plaintiff, Chirag Shah, is a contractor for the United States Customs and Border

Protection (CBP). Through his work, Plaintiff has security clearances with CBP, DHS, the US

Department of Veterans Affairs, the Internal Revenue Service, and the Federal Aviation

Administration (FAA). He is a US citizen and is originally from India. He is a resident of, and

domiciled in, Chantilly, Virginia.

5.     Defendant, SOUTHWEST AIRLINES, is a national air carrier that operates passenger

flights throughout the country and is incorporated in the state of Texas with headquarters at 2702

Love Field Drive, Dallas, Texas 75235. SOUTHWEST AIRLINES maintains a business

presence at the Washington Dulles International Airport in Sterling, Virginia.

## JURISDICTION

6.      Jurisdiction is proper in this Court because this litigation arises under federal law; namely

under 28 U.S.C. §§1331 and 1343.  This Court has pendent and supplemental jurisdiction over

state law claims pursuant to 28 U.S.C. § 1367.  This Court has the authority to grant declaratory,

injunctive and monetary relief pursuant to 28 U.S.C. §§1343, 2201, and 2202.

7.      The events giving rise to this action occurred in Sterling, Virginia at the Washington

Dulles International Airport. Defendant maintains a consistent business presence at Washington

Dulles International Airport. Thus, venue lies with this Court pursuant to 28 U.S.C. §§1391(b)(2).

8.      The amount in controversy exceeds $75,000.00 excluding interest and costs.


## FACTUAL ALLEGATIONS

9.      On April 15, 2013, Mr. Shah arrived at Washington Dulles International Airport and

checked into flight number 392, which was departing for Denver, Colorado at 6:10 pm.  Plaintiff

was travelling to Denver to meet with representatives of the United States Department of

Agriculture to consult with them on upgrading their Information Technology security software.

Plaintiff is a contractor for the United States Customs and Border Protection (CBP).

10.     Plaintiff proceeded to go through the normal TSA checkpoint with his baggage.

11.     Mr. Shah then boarded the plane and exchanged pleasantries with Defendant Southwest

Airlines flight attendant. Plaintiff saw that the first window seat on the left side of the plane was

open and sat there as the flight had an open seating policy.  As the plane left that gate, Plaintiff

had a conversation with the individual seated next to him.

12.     Eventually, the plane exited the gate.  Defendant's flight attendants were seated

diagonally and to the left from where Plaintiff was sitting.

13.   Plaintiff then observed the same flight attendant who had greeted him upon entry to the plane staring at him from across the aisle.  Plaintiff glanced back and forth several times and on each occasion he noticed the same the flight attendant staring at him.

14.   As the plane was about to take its last turn to towards the runway, the pilot turned the plane in the opposite direction and announced that they were heading back to the gate due to some issue with a passenger.  Plaintiff joked with the gentlemen seated next to him that some VIP must have been left behind.

15.   Upon return to the gate, several members of what Plaintiff believed to be Airport Security boarded the plane. One officer approached Plaintiff and asked if he could step off the plane. Plaintiff complied and walked with the officer towards the middle of the jet bridge.

16. Subsequently, several TSA officers arrived at the jet bridge and asked Plaintiff to provide them with identification.  Plaintiff provided the officers with a badge, showing him to be a contractor with CBP.  Ironically, Mr. Shah, who himself has security clearances from DHS and CBP, was being questioned by TSA, an agency under DHS, in order to determine if he was a security risk.  In short order, TSA determined that Plaintiff was not a security risk.

17.   While being questioned, Plaintiff also noticed that another officer was standing to his left and questioning another gentlemen who appeared to be of South Asian descent as well.  Plaintiff could hear the individual state that he was taking a nap while the plane was taxiing and then he was removed from the plane.  Plaintiff also observed the flight attendant speaking with a TSA agent.

18.   Plaintiff saw Defendant's pilot exit the plane and speak with one of the TSA officers, who immediately conveyed to Plaintiff that though he was not a security risk, he would not be allowed back onto the plane.  The TSA officer then instructed Plaintiff and the other gentleman

who was removed from the plane that they needed to go to Defendant's customer service desk for alternate travel arrangements.

19.    When Plaintiff arrived at the Defendant's customer service desk, he requested that he be credited the fee he paid for the airline ticket. Defendant's agent refused.  Plaintiff declined to board another plane and left the airport in disgust to go home.  The next day Defendant offered Plaintiff a $100 voucher, which he refused.

20.    All actions taken by the flight attendant described herein were undertaken in his capacity as an agent of Defendant.

21.    All actions taken by the flight attendant described herein were undertaken in the course of his employment with Defendant.

22.    All actions taken by the flight attendant described herein were undertaken while performing the business of Defendant.

23.    All actions taken by the flight attendant described herein were undertaken while acting within the scope of his employment with Defendant.

24.    All actions taken by the pilot described herein were undertaken in his capacity as an agent of Defendant.

25.    All actions taken by the pilot described herein were undertaken in the course of his employment with Defendant.

26.    All actions taken by the pilot described herein were undertaken while performing the business of Defendant.

27.    All actions taken by the pilot described herein were undertaken while acting within the scope of his employment with Defendant.

## Count I
## 49 U.S.C. § 40127(a)
## Prohibitions on Discrimination

28.     The allegations contained in the preceding paragraphs are hereby realleged and

incorporated herein by reference.

29.     This claim is authorized and instituted pursuant to 49 U.S.C. § 40127(a), which, in

pertinent part, states that an air carrier "may not subject a person in air transportation to

discrimination on the basis of race, color, national origin, religion, sex, or ancestry."

30.     Defendant is an air carrier and Plaintiff is a person who participates in routine air

transportation.  Defendant denied Plaintiff boarding Flight Number 392 to Denver, Colorado,

due to blatant discrimination based on Plaintiff's religion, national origin, race, and appearance

and perceptions of being noticeably Muslim and/or Middle Eastern and/or Southeast Asian in

origin.


## Count II
## 42 U.S.C. § 1981
## Equal Rights Under the Law

31.     The allegations contained in the preceding paragraphs are hereby realleged and

incorporated herein by reference.

32.     This claim is authorized and instituted pursuant to 42 U.S.C. § 1981, which states, in

relevant part, "[a]ll persons, within the jurisdiction of the United States, shall have the same right

in every State and Territory to make and enforce contracts...."

33.     The pilot, flight crew, gate agents, and ground security personnel for Defendant's Flight

#392 on April 15, 2013, were at all relevant times, agents and/or employees of Defendant.

34.     Defendant is liable for the unlawful acts of their agents and employees directly and/or under the doctrine of *respondeat superior*.

35.     Defendant engaged in intentional and blatant discrimination on the basis of Plaintiff's race, color, and national origin by removing Plaintiff from Defendant's Flight #392 on April 15, 2013. Plaintiff has the right, in every State, "to make and enforce contracts," with Defendant and they have the right of "enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationships." By denying Plaintiff the right to board and fly with Defendant, Defendant discriminated against Plaintiff in making and enforcement of their contract with Defendant, namely, one ticket purchased by Mr. Shah for travel on Flight # 392, on April 15, 2013, to Denver, Colorado.

**Count III**
**49 U.S.C. § 44902 (b)**
**Refusal to Transport Passengers and Property**

36.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein by reference.

37.     This claim is authorized and instituted pursuant to the Federal Aviation Act, 49 U.S.C. § 44902, which states, in pertinent part that "an air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b).

38.     Defendant's actions described herein were arbitrary and capricious and fall far outside the permissive scope of transport refusal under the Federal Aviation Act.  In making the decision to exclude Plaintiff from the aircraft, the Defendant's pilot relied on the race, national origin and/or religion of Plaintiff.  Nothing about Plaintiff's behavior was inimical to safety.

### Count IV
### 42 U.S.C.A. § 2000a
### Prohibition Against Discrimination or
### Segregation in Places of Public Accommodation

39.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein by reference.

40.     Defendant denied Plaintiff "the full and equal enjoyment" of a place of public accommodation, when he was denied the right to board the Defendant's aircraft for Flight #392, for which he had previously purchased one ticket.

41.     Under the law, the place where the incident took place, the Washington Dulles International Airport, is a place of public accommodation based on interstate commerce principles. Plaintiff was denied access to an accommodation for which he had validly-purchased a ticket.

### Count V
### Negligent Supervision

42.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein by reference.

43.     Defendant was negligent in preventing Defendant's pilot from discriminating against Plaintiff.

44.     Defendant has a duty to ensure that every passenger is treated with respect, dignity, courtesy, and that each passenger is afforded the same, fair treatment as other passengers.

45.     Defendant has a duty to maintain proper control over their employees and over individuals who act as representatives or agents of their corporations.

46.     Defendant breached their duty by not forcing the pilot to allow Plaintiff to board the plane, and not taking immediate measures to discipline the pilot.

47.     Defendant had numerous opportunities to aide Plaintiff; however, Defendant continually expressed an inability to intervene and prevent the pilot from discriminating against Plaintiff based upon his perceived race, color, national origin, ancestry, and/or religion.

48.     As a result of Defendant's negligence, Plaintiff was publicly humiliated, embarrassed, ashamed, and terrified.

## Count VI
## False Imprisonment

49.     The allegations contained in the preceding paragraphs are hereby realleged and incorporated herein by reference.

50.     Defendant's initiation of the removal from the plane and subsequent detention by TSA directly caused a restraint of Plaintiff's liberty.

51.     Defendant's initiation of the detention was without any sufficient legal excuse.

52.     As a direct and proximate result of the Defendant's actions described above, Plaintiff has suffered loss of his freedom, severe emotional and mental pain and suffering.

53.     Defendant's actions were in willful, wanton, malicious and reckless disregard of Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court:

a. Declare that the Defendant's actions in removing Plaintiff from Flight #392 were in violation of the aforementioned statutes and of Plaintiff's common law rights.

b. Declare that the Defendant's actions and treatment of Plaintiff on the basis of his perceived race, color, ethnicity, religion, alienage, ancestry, and/or national origin were in violation of the aforementioned statutes and of Plaintiff's common law rights.

c. Enter a permanent injunction prohibiting the Defendant, its directors, officers, agents, pilots, and employees from singling out passengers for mistreatment based on their perceived race, color, ethnicity, religion, alienage, ancestry, and/or national origin, and ordering the Defendant, their directors, officers, agents, pilots, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future.

d. Award Plaintiff compensatory damages against Defendant in an amount to be determined at trial for Plaintiff's losses and injuries.

e. Award Plaintiff punitive damages against Defendant in an amount to be determined at trial that would punish Defendant for their willful, wanton, and reckless conduct and that would effectively deter Defendant from engaging in similar conduct in the future.

f. Award Plaintiff reasonable attorneys' fees and the costs incurred in this action.

g. Award Plaintiff prejudgment interest.

h. Award Plaintiff such other and further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

PLAINTIFF,
CHIRAG SHAH,

_____
Thomas R. Breeden, VSB # 33410
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel (703) 361-9277, facsimile (703) 257-2259
trb@tbreedenlaw.com

Sanjay Sethi
Sethi & Mazaheri, LLC
9 Polifly Road, 2nd Floor
Hackensack, NJ 07601
201-606-2267
Facsimile 201-595-0957
sethi@sethimaz.com
Pro Hac Vice to be filed
*Counsel for Plaintiff*