

# Transcript of **ELIZABETH BEHRENS**

**Date:** June 9, 2014

**Case:** SHAH v. SOUTHWEST AIRLINES, ET AL.

Planet Depos
Phone: 888-433-3767
Fax: 888-503-3767
Email: transcripts@planetdepos.com
Internet: www.planetdepos.com

Court Reporting | Videography | Videoconferencing | Interpretation | Transcription

1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF VIRGINIA

3    ---------------------------x

4    CHIRAG SHAH,                    )

5          Plaintiff,          )

6    VS.                         )   Civil Action No.

7                               )   1:13CV1481 AJT/JFA

8    SOUTHWEST AIRLINES, et al., )

9          Defendants.          )

10   ---------------------------x

11

12          Deposition of ELIZABETH BEHRENS

13               Dallas, Texas

14            Monday, June 9, 2014

15                 3:37 p.m.

16

17

18

19

20   Job No.: 59188

21   Pages: 1 - 21

22   Reported by: Michelle L. Munroe

2

1          Deposition of ELIZABETH BEHRENS, held at

2     the offices of:

3

4

5

6               DepoTexas & Sunbelt Reporting – Dallas

7               6500 Greenville Avenue

8               Suite 445

9               Dallas, Texas 75206

10

11

12

13

14        Pursuant to Notice, before Michelle L. Munroe,

15     Certified Shorthand Reporter in and for the State of

16     Texas.

17

18

19

20

21

22

3

1                    A P P E A R A N C E S

2      FOR THE PLAINTIFF:

3           Mr. Thomas R. Breeden

4           THOMAS R. BREEDEN, P.C.

5           10326 Lomond Drive

6           Manassas, Virginia  20109

7           703.659.0188

8

9      FOR THE DEFENDANT SOUTHWEST AIRLINES AND THE WITNESS:

10          Mr. Jonathan M. Stern

11          SCHNADER HARRISON SEGAL & LEWIS LLP

12          The Victor Building

13          750 9th Street, NW

14          Suite 550

15          Washington, DC  20001-4534

16          202.419.4202

17

18

19

20

21

22

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

4

1                    C O N T E N T S

2    EXAMINATION OF ELIZABETH BEHRENS              PAGE

3        By Mr. Breeden                              5

4

5                    E X H I B I T S

6                  (None marked)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

5

                    P R O C E E D I N G S

                   ELIZABETH BEHRENS,

having been first duly sworn, testified as follows:

                        EXAMINATION

BY MR. BREEDEN:

     Q.   State your name for the record, please.

     A.   Elizabeth Behrens.

     Q.   What is your occupation?

     A.   I'm a specialist in the customer advocacy,

customer relations department at Southwest Airlines.

     Q.   What does that mean?

     A.   I am on a specialized team that I respond to

customer complaints about Southwest Airlines.

     Q.   Okay.  So if the customer has -- whatever the

complaint is, you take it, you decide where it gets

forwarded to for investigation?

     A.   No.

     Q.   Tell me, how -- what is the job function?  How

does it happen?

     A.   If I get a service request assigned to me or

comes up in a queue, I have a different process, and

then I'm responsible for responding to that complaint.

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

6

1      Q.    What steps do you take to respond to the

2   complaint?

3      A.    Depends on the complaint.

4      Q.    Okay.  In this situation, we have a passenger

5   who was deboarded and felt that it was inappropriate to

6   have been deboarded.

7            What steps do you take then?

8      A.    We would request reports from the employees

9   involved and then go from there based on the information

10   that we receive.

11      Q.    Okay.  Give me, I guess, an example of what do

12   you mean "go from there."  I'm trying to figure out what

13   that means.

14      A.    Well, if we -- I mean, if we have requested

15   reports so we can get the information we think we need

16   to respond to the customer's complaint, then we will

17   respond to the customer's complaint at that point.

18            Or if we need some more information or need to

19   do some more research based on the information and the

20   customer's complaint, then we'll take those steps.

21      Q.    And when you get a complaint in, who would you

22   generally send the complaint to?  The flight crew and

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

7

1    the cabin crew on the plane in question, correct?

2        A.    Depends on the customer's complaint.

3        Q.    Okay.  Again, the situation where a customer

4    feels he was deplaned inappropriately and potentially

5    based on race.

6        A.    If the complaint has to do with, you know, a

7    situation that happened on board the aircraft, then,

8    yes, we would request, in that situation, reports from

9    the flight attendants and perhaps the -- the captain,

10   the pilot.

11       Q.    Okay.  Anybody else you would send the

12   information to or seek input from in formulating your

13   response?

14       A.    It's possible.

15       Q.    Who would that be?

16       A.    Depends on the situation.

17       Q.    The situation we're talking about here.

18       A.    Okay.  If -- the employees who were involved,

19   if they were ground operations employees involved --

20       Q.    Okay.

21       A.    -- then we'll request reports from them as

22   well, see if they have recollection of the situation.

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

8

1      Q.   Okay.  And then you would gather all that

2  information?

3      A.   Yes, sir.

4      Q.   And you would then issue a response?

5      A.   Yes, sir.

6      Q.   Would you send that response to the customer

7  or would you have that response reviewed prior to

8  sending it to the customer?

9      A.   It depends on the situation, but in this

10  particular situation, we did have the response reviewed.

11      Q.   Who did you have it reviewed by?

12      A.   It was reviewed by an outside insurance.

13      Q.   Okay.

14      A.   An attorney at our insurance company.

15      Q.   Okay.  And how about anybody in-house?  Do you

16  have legal staff in-house review it as well?

17      A.   We do have legal staff who does review

18  responses.  I don't recall them reviewing this one.

19      Q.   Okay.  Why would you send it out to the

20  insurance legal team to review?

21      A.   Because in this particular response, we

22  requested information from -- requested our customer

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

9

1      claims administration team to take a look at this

2      situation, and they then requested that we forward it on

3      to USAIG.  They made that determination.

4          Q.   Okay.  You're not sure what the purpose of

5      sending it out was?  You didn't make the determination?

6          A.   No, I don't make that determination.

7          Q.   You then got the response back, incorporate it

8      with suggestions from the insurance's legal team and

9      then sent the response to Mr. Shah?

10         A.   That's correct.

11         Q.   When the -- before you provide your ultimate

12     response, do you send that back to the flight crew,

13     captain, anybody else to make sure what you're putting

14     in is accurate?

15         A.   No, sir.

16         Q.   Do you -- when you get the -- when you got the

17     response, this came back from the insurance legal team,

18     did you review it with anybody to make sure that their

19     changes did -- the changes were accurate?

20         A.   No one else reviewed the response.

21         Q.   Okay.  What actions did you take to ensure the

22     changes suggested by the insurance company's legal team

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

10

1    were, in fact, accurate?

2        A.   What -- what changes are you -- are you

3    referring to a specific change?

4        Q.   You're saying there's changes by the insurance

5    legal team.

6        A.   Is it okay if I...

7        Q.   Sure.

8        A.   Just so I have it here in front of me.

9            MR. STERN:  It's almost to the end.

10           THE WITNESS:  Thank you.

11       A.   Now, what was your question?  I'm sorry.

12       Q.   What steps did you take to ensure the changes

13   that were suggested by the insurance company's legal

14   team were accurate?

15       A.   I didn't take any steps.  Based on the

16   information that we had, it was accurate.

17       Q.   Okay.  You reviewed what they changed,

18   correct?

19       A.   That's correct.

20       Q.   And have all -- have all of the changes they

21   made been given to us?  We have been given a copy of all

22   the changes -- the changes were done in writing, right,

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

11

1    by e-mail?

2        A.   Yes.

3        Q.   Have we been given a copy of all those e-mails

4    regarding the changes?

5        A.   I'm not responsible for pulling all of that

6    information.

7                MR. BREEDEN:  I know we have one.  Do we

8    have all of the changes, John?

9                MR. STERN:  Certainly my understanding.

10   You can ask her whether this is the sole change.  It's

11   Southwest page 343.

12               MR. BREEDEN:  Okay.

13       Q.   Is that the sole and only change -- there's

14   only one change on the document?

15       A.   As far as I can recall.

16       Q.   And what was that change?

17       A.   "Due to safety related issues" was added.

18       Q.   Okay.  You did not have that in your initial

19   draft?

20       A.   That is correct.

21       Q.   Is there a reason that you did not have that

22   in your initial draft, that there were safety concerns?

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

12

1      A.   I'm not sure I understand your question.

2      Q.   Is there a reason your initial draft response

3  to Mr. Shah did not indicate that there was safety

4  related concerns?

5      A.   I outlined the -- the situation was handled in

6  accordance with our contract of carriage, so I -- like I

7  said, I'm not sure I...

8      Q.   Well, your initial response to Mr. Shah -- or

9  your initial draft of your response to Mr. Shah did not

10  mention that the -- that his removal was based on safety

11  related concerns but rather just merely saying not it's

12  in compliance with your contract, correct?

13      A.   That's correct.

14      Q.   Is there a reason why your initial draft to

15  him did not say anything about safety related concerns?

16      A.   Not that I can think of.

17      Q.   The initial draft of the letter to Mr. Shah,

18  is that based -- is there a template that you use or do

19  you draft each letter to customers individually or is

20  there a basic form template that you use and pump things

21  in?

22      A.   No, there's not a basic form template.

13

1    Q.   You basically start from scratch on each

2  letter?

3    A.   I use some of the same verbiage.  When it

4  comes to like an opening or a closing, I would use some

5  of the same verbiage.  Or if I had a similar situation,

6  then I might, you know, look at verbiage and, you know,

7  to kind of give it a basis.

8    Q.   In this case, did you -- had you had a similar

9  situation to the one Mr. Shah was complaining about?

10   A.   I have handled denied boarding situations

11 before, yes, sir.

12   Q.   Okay.  Did you take verbiage from another

13 letter for this letter?

14   A.   I don't recall specifically.

15   Q.   I understand you probably do a lot of these --

16   A.   I do.

17   Q.   -- and it's hard to remember exactly which

18 one.

19   A.   Just a lot of customer -- a lot of customer

20 complaints, concerns.

21   Q.   Do you have any independent recollection of

22 this matter, this investigation, this correspondence

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

14

1    other than from reviewing the paperwork?

2         Do you have any independent recollection or

3    that is your sole recollection, that I see this, yes, I

4    wrote it, I don't remember much else but I know I wrote

5    it and that's about it?

6         A.   That's about it.

7         Q.   You don't have any independent memory of

8    any -- I'm not saying you should, but you do hundreds of

9    these if not more -- if not thousands of these, right.

10   I understand that.

11        I'm just trying to find out if any of your

12   memory is in your head as opposed to on the paper?

13        A.   No.  It would all be based on...

14        Q.   Okay.  Was there any nonwritten communication

15   with Mr. Shah, anything verbally, phone call, anything

16   like that?

17        A.   Yes, sir.

18        Q.   And do you have any recollection of any of

19   that?

20        A.   Yes, sir.

21        Q.   What is your recollection of your phone calls

22   with Mr. Shah?

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

15

1        A.    I don't recall a phone call with him

2   specifically.

3        Q.    Okay.  Do you recall whether there was one?

4        A.    Yes, there was a phone call.

5        Q.    And your sole recollection is what was put in

6   the notes, correct?

7        A.    That is correct.  I was not privy to that

8   telephone call.

9        Q.    Okay.  All the records and all the notes and

10  written e-mails regarding the -- strike that.

11            The e-mails that Southwest created internally

12  and sent to their insurance company's attorneys, these

13  have all been kept in the ordinary course of business,

14  correct?

15       A.    As far as I know.

16       Q.    According to your standard procedure to create

17  these in your ordinary course of business, correct?

18       A.    Create?

19       Q.    Your e-mails, your records, your notes, that's

20  part of your job is to record what's happening by letter

21  or memo, correct?

22       A.    I forward the request to our customer claims

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

16

1    administration team via e-mail --

2         Q.    Okay.

3         A.    -- and then wait for a response from them and

4    then respond to the customer.

5         Q.    That's part of your job function?

6         A.    Yes.

7         Q.    And the communications between -- strike that.

8              Your e-mails to and from Mr. Shah are part of

9    the e-mails that Southwest would keep in this type of

10   situation, right?

11        A.    That is correct.

12        Q.    And the e-mails to and from your insurance

13   company's attorneys are part of the e-mails and records

14   that you would keep when you send it out to the

15   insurance company for review?

16        A.    Actually that is not my responsibility to keep

17   those.

18              MR. BREEDEN:  John, are we going to have

19   any issue with those being business records of

20   Southwest?

21              MR. STERN:  It's really not a business

22   record issue because that's a hearsay exception.  I

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

17

1    don't think there's any hearsay in there.

2              MR. BREEDEN:  I'm talking about the

3    communications with the insurance company.

4              MR. STERN:  Is your concern

5    authentication --

6              MR. BREEDEN:  Right.

7              MR. STERN:  -- or -- or -- no, there's

8    no --

9              MR. BREEDEN:  Okay.  No issue with that?

10             MR. STERN:  I have other reasons that I

11   may challenge the admissibility of that document.

12             MR. BREEDEN:  Right.  But not from

13   authentication?

14             MR. STERN:  No.

15             MR. BREEDEN:  Okay.  That's all the

16   questions I have for her.

17             MR. STERN:  She's going to be very

18   disappointed.

19

20   (Signature having not been waived, the

21   deposition of ELIZABETH BEHRENS was concluded

22   at 3:52 p.m.)

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

18

1          ACKNOWLEDGMENT OF DEPONENT

2          I, ELIZABETH BEHRENS, do hereby

3     acknowledge that I have read and examined the

4     foregoing testimony, and the same is a true, correct

5     and complete transcription of the testimony given by

6     me and any corrections appear on the attached Errata

7     sheet signed by me.

8

9

10

11

12     _____      _____

13          (DATE)                    (SIGNATURE)

14

15

16

17

18

19

20

21

22

DEPOSITION OF ELIZABETH BEHRENS
CONDUCTED ON MONDAY, JUNE 9, 2014

19

1   STATE OF TEXAS   )

2   COUNTY OF DALLAS )

3

4       I, Michelle L. Munroe, Certified Shorthand Reporter

5   in and for the State of Texas, certify that the

6   foregoing deposition of ELIZABETH BEHRENS was reported

7   stenographically by me at the time and place indicated,

8   said witness having been placed under oath by me, and

9   that the deposition is a true record of the testimony

10  given by the witness.

11      I further certify that I am neither counsel for nor

12  related to any party in this cause and am not

13  financially interested in its outcome.

14      Given under my hand on this the 19th day of

15  June, 2014.

16

17

18

19  _____

20  Michelle L. Munroe, CSR No. 6011

21  Commission expires 12-31-15

22

No. 59188

Re:     Deposition of **Elizabeth Behrens**
        Date: 06/09/2014
        Caption: Shah -v- Southwest Airlines, et al

| Page | Line | Correction/Change and Reason |
|------|------|------------------------------|
| 9 | 7 | The letter "d" needs to be added to the word "incorporate." / The question was mistranscribed. |
| 12 | 11 | The word "not" needs to be deleted. / The question was mistranscribed. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

7/2/14
(Date)

_Elizabeth Behrens_
(Signature)

No. 59188

Re:     Deposition of **Elizabeth Behrens**
        Date: 06/09/2014
        Caption: Shah -v- Southwest Airlines, et al

ACKNOWLEDGMENT OF DEPONENT

        I, Elizabeth Behrens, do hereby

acknowledge that I have read and examined the

foregoing testimony, and the same is a true, correct

and complete transcription of the testimony given by

me and any corrections appear on the attached Errata

sheet signed by me.

_____7/2/14_____                _____Elizabeth Behrens_____
     (Date)                              (Signature)

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM