IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

CHIRAG SHAH,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )         CIVIL ACTION No.
                                      )         1:13CV1481
                                      )
SOUTHWEST AIRLINES, et al             )
                                      )
            Defendant.                )

**PLAINTIFFS' MEMORANDUM REGARDING JURY INSTRUCTIONS**

COMES NOW the Plaintiff, by and through counsel, and as for his Memorandum

regarding Jury Instructions, and pursuant to the Court's August 20, 2014 order, do hereby state

the following:

**Defendant's Jury Instruction 1.**

Defendant's Jury Instruction 1 attempts to set forth the burdens of proof in this matter.

However, the instruction fails to properly allocate the respective burdens of proof.  As will be

addressed below, Defendant has the burden of proof to 1) show that it made a determination,

under 49 USC § 44902(b) that Plaintiff might be inimical to safety; and 2) that there was a

legitimate nondiscriminatory reason for its actions.  This instruction confuses the jury into

believing that the entire burden is on Plaintiff, including the burden to disprove the defenses

which have been raised.

**Defendant's Jury Instruction 2.**

Defendant has proposed Jury Instruction 2.  This instruction, while benign at first glance,

misstates the law in these matters.  The instruction fails to recognize the difference between a

factual inference and a legal inference.  A factual inference is something the jury can draw on its own, and can decide whether or not to draw the factual inference.  However, in matters under 42 U.S.C. § 1981, legal inferences can be drawn - specifically an inference of discrimination can be made based on a prima facie showing of discrimination.  If a legal inference is made, the jury is not free to disregard that inference.

**Defendant's Jury Instruction 3.**

Defendant has proposed Instruction 3 which purports to eliminate the McDonnell Douglas[1] burden shifting.  As argued below in connection with Defendant's Instructions 10-12 and Plaintiff's Instructions A-F and K, McDonnell Douglas burden shifting applies in this case. Instruction 3 would tell the jury that even if the Court tells them they can draw an inference of discrimination, that they are free to disregard that inference and require Plaintiff to prove discrimination over and above the inference.  This is just not an accurate description of the law.

**Plaintiff's Jury Instruction O.**

Plaintiff intends to submit documentation showing that the "safety related issues" raised by Defendant herein was orchestrated by Defendant's insurance company.  The parties have previously submitted memoranda regarding the admissibility of this insurance origination (Doc. 39, 54, 62).  As Plaintiff has noted in his Memorandum (Doc. 54), any prejudice to the Defendant from the admission of the reference to insurance can be alleviated by an instruction similar to proposed instruction O.  Proposed instruction O is based on Virginia Model Jury Instruction 9.015.

**Defendant's Jury Instruction 4.**

Instruction 4 sets forth an instruction related to discrepancies in testimony.  However,

---

[1] <u>McDonnell Douglas v Green</u>, 411 US 792, 802-804 (1973)

2

Instruction 4 is not designed for the sweeping purpose Defendant purports it to stand for.  The very authority from whom Southwest adopted the proposed instruction, Judge Sand, limits the use of this instruction. In his comments, Judge Sand states that "Counsel should request the court to charge Instruction 76-4 [*i.e.*, Disputed Instruction No. 4] in instances when a witness has been impeached with trivial prior inconsistent statements, or when other witnesses have differed in their testimony, and there are obvious innocent explanations to the discrepancies." Sand, *Modern Federal Jury Instructions – Civil*, Comment to § 76-4. In other words, the instruction is meant for situations in which, for example, a police officer inadvertently testifies that a license plate number as "U" instead of "V" because he cannot read his own handwriting. The mistake is both trivial and, because the letters look similar, subject to an innocent explanation.

Here, by contrast, there is nothing to indicate that the case will turn on such trivial matters or on discrepancies subject to innocent explanation. To take only the most salient example: a number of the fact witnesses referred to Mr. Shah and the other passenger removed the plane and denied reboarding as being "Middle Eastern looking" or "Indian" or "tanned" – the case will almost certainly not turn on any of these descriptions. Nor will it turn on which passenger sat in which seat.   Likewise, most of the Defense witnesses have made liberal use of deposition errata sheets, in some instances changing their testimony to the exact opposite of what had been clearly stated in the deposition.[2]  The case will ultimately turn on the far more basic

---

[2]A perfect example of this is the deposition testimony of Ruby Boykin, a Southwest employee who met the plane and crew at the gateway when it returned to deboard Plaintiff.  In her deposition, Ms. Boykin clearly stated that various statements were made by both Shannon Ramos and a Mr. Momadou (who was the first one to speak to Ms. Ramos).  Ms. Boykin testified that both Mr. Momadou and Shannon Ramos confirmed the same rendition of the events on the plane, and that Ms. Ramos verified the statements were correct.  In her errata sheet, Ms. Boykin wishes to change that testimony to "I cannot distinguish what Momadou told me from what Shannon Ramos told me".  The obvious reason for this is that Ms. Ramos said

question of the prejudices of two of the flight attendants and the captain's to accommodate those prejudices.

**Defendant's Jury Instruction 5.**

Defendant has proposed a "Prior Inconsistent Statements By a Party" instruction. However, this instruction is designed exclusively for cases where the prior inconsistent statement is offered for impeachment purposes only, and as such, it has no place here.

First of all, Southwest has chosen to pull a proposed jury instruction out of thin air instead of adopting Judge Sand's Instruction No. 76-5, entitled "Impeachment by Prior Inconsistent Statements." Missing are all of Judge Sand's directions concerning matters like the following: "It is exclusively your duty, based upon all of the evidence and your own good judgment, whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony."[3] In other words, Southwest trimmed from Judge Sand's instruction the parts that might lead a jury to find against it based on inconsistent statements, leaving only bland directions to use common sense.

But more importantly, Judge Sand himself limited the use of instructions such as his No. 76-5 and Southwest's Disputed Instruction No. 5 to particular types of cases. In his words, "Instruction 76-5 is designed exclusively for cases where the prior inconsistent statement is offered for impeachment purposes only. It should not be given when the prior statement is admissible for its truth, as in the case of testimony from a previous trial used in a retrial." *Id*. (comment). But here is the part of Judge Sand's comment that makes this instruction absolutely

---

nothing to Ms. Boykin about a security threat, and instead characterized Mr. Shah as unruly.  This is not a trivial or innocent discrepancy.

[3] Sand, Modern Federal Jury Instructions – Civil, Comment to § 76-5.

inappropriate: "Similarly, if the prior statement was made under oath subject to the penalty of perjury at a deposition, it may be offered as affirmative proof under Rule 801(d)(1)(A) and instruction 76-5 should not be given. In those circumstances, no special attention need be called to the prior statement." *Id*. Thus, we have the very authority upon whom Southwest has relied advising that the instruction should not be used where, as here, the prior inconsistent testimony comes from deposition testimony given in the same case.

**Plaintiff's Jury Instructions G, H, I and J / Defendant's Jury Instruction 6**

Plaintiff's Jury Instructions G, H, I and J and Defendant's Instruction 6 all deal with the elements of Defendant's 49 USC §44902 defense.  In order to raise the defense of immunity under §44902, Defendant must first show that it in fact a determined that Mr. Shah was inimical to safety.[4]  If Defendant in fact made such a determination – a hotly contested factual issue in this case –  the Plaintiff then has the burden to show that, based on the information available to the decision maker at the time, this determination was arbitrary and capricious, as opposed to reasonable and rational.[5] This is required because until an actual determination has been made, there can be no review to see if the determination was arbitrary and capricious.  Instructions G and J set forth this standard succinctly.  Instruction H provides the definition of "Inimical", taken from the Oxford English Dictionary and the American Heritage Dictionary of the English Language.[6]  Instruction I provides the definition of "arbitrary and capricious" taken from Blacks

---

[4]  49 U.S.C. §44902(b).

[5] 49 U.S.C. §44902(b); <u>Williams v Trans World Airlines</u>, 509 F.2d. 942, 948 (2d Cir. 1975); <u>Schaeffer v Cavallero</u>, 54 F.Supp.2d 350, 352 (S.D.N.Y. 1999), <u>Bayaa V United Airlines, Inc.</u>, 249 F. Supp.2d 1998 (C.D. Cal. 2002); <u>Dasrath v Continental Airlines, Inc.</u>, 228 F.Supp.2d 531, 540 n.12 (D. N.J. 2002); <u>Al-Qudhai'een v Am. W. Airlines, Inc. </u>, 267 F.Supp.2d 841 ,847 (S.D. Ohio 2003).

[6]  Oxford English Dictionary 1438 (1973); The American Heritage Dictionary of the English Language 929 (3d. Ed. 1992)

Law Dictionary.[7]

Defendants have proposed Instruction 6 as an alternative.  Instruction 6 not only misstates the law, but adds significant language that is likely to confuse the jury.  For instance, the first paragraph of Instruction 6 is designed solely to dissuade the jury from entering a judgment for Plaintiff, rather than advising them of the law.  It is akin to closing argument of the Defendant.  Instruction 6 erroneously advises the jury that all Defendant has to do is mention section 44902(b), and Plaintiff then has to show that any determination was arbitrary and capricious, even if there was in fact no determination made that Plaintiff was inimical to safety. This would be a legal impossibility if no such determination was made.  Instruction 6 also gives an overly narrow definition of "inimical" and "arbitrary and capricious".

Instruction 6 also provides greater immunity than section 44902(b) provides.  Section 44902(b) provides immunity from liability if its requirements are met.  However, if no determination is made that the passenger might be inimical to safety, or if such a determination is made arbitrarily or capriciously, then section 44902(b) immunity is inapplicable.  In determining whether section 44902(b) applies, the jury would look solely to the captain's decision and the information available to the captain, and would not attribute biases of the flight attendants to the captain.  However, if section 44902(b) were not applicable, then the matter becomes solely one under 42 USC §1981, and the biases of the flight attendants would be attributed to Southwest.

In addition, Instruction 6 misstates that the captain's decision must be evaluated solely on the information he possessed when the decision was made.  In fact, it should be evaluated on the information available to the captain when the decision was made - the captain can not turn a

---

[7]Black's Law Dictionary (West 9th ed 2009) at 119.

blind eye to available contradictory information and claim that his decision was not arbitrary.

**Plaintiff's Jury Instruction P/ Defendant's Jury Instruction 7.**

In connection with Instructions 15/R, the parties agree that a definition of managerial capacity is required in determining whether to award punitive damages against the corporation. Defendant obviously desires a narrow definition of managerial capacity, and has looked to various employment law cases to support its definition.  However, this is not an employment discrimination case.  Instead, it is a situation where the captain of a plane, who had sole authority to determine whether a passenger would fly on that plane or not, decided not to allow the Plaintiff to fly.  Thus, it is important for the jury to look at what authority Southwest gave him with regard to the plane, and what discretion, beyond just hiring and firing subordinates, the captain had.

**Defendant's Jury Instruction 8.**

Defendant's instruction 8 seeks to limit the circumstances under which Defendant can be held liable for punitive damages.  The standard for punitive damages is set forth in disputed Instructions 13, 14, 15, 16, M, N and R, and fully argued in the discussion regarding these disputed instruction.  While the issue of whether Defendant had policies in place may be relevant to a determination of whether punitive damages apply, the mere presence of these policies would not eliminate liability for punitive damages – at a minimum, the Defendant would have to also show that the policies were actually enforced.

**Defendant's Jury Instruction 9**

Defendant has proposed Instruction 9, which advises the jury that Section 1981 cases are not applicable to discrimination based on national origin or religion.  However, there are 2 problems with this instruction.  First, it is likely to confuse the jury.   The parties have already

agreed upon Jury Instruction 32, which instructs that Plaintiff is in a protected class, as a member of the South Asian ethnic group.  Instruction 9 fails to explain to the jury the difference between national origin and ethnicity.  This is understandable, as there is very little difference. Judge Brennan, in his concurring opinion in St. Francis Coll. v. Al–Khazraji, said it best:

> the line between discrimination based on ancestry or ethnic characteristics . . . and discrimination based on place or nation of ... origin . . . is not a bright one. It is true that one's ancestry-the ethnic group from which an individual and his or her ancestors are descended-is not necessarily the same as one's national origin-the country "where a person was *born*, or, more broadly, the country from which his or her ancestors *came*." .... Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group.[8]

Further, a determination of whether a particular class – be it South Asian, Indian, or otherwise – is protected under Section 1981 is a legal issue for the Court to determine, not a factual issue for the jury.  This is why Judge Sand, in his Modern Federal Jury Instructions - Civil, specifically indicates that no instruction is to be given advising that National Origin, Gender and Religion are not included.[9]

### Plaintiff's Jury Instructions A, B, C, D, E, F, and K / Defendant's Jury Instructions 10, 11, 12

These instructions deal with the burdens of proof and presumptions in an action under 42 USC §1981.  Instructions A and 10 are similar, in laying out the framework of a section 1981 claim.  However, Instruction A alerts the jury to the fact that discrimination does not have to be conscious or overt, but can include actions based on stereotyped thinking and other forms of less

---

[8] 481 U.S. 604, 614, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (internal citations omitted).

[9] 4 Leonard B. Sand, et al, Modern Federal Jury Instructions - Civil, §87-10, Comment.

conscious bias.  Such actions would constitute discrimination.[10]

Instructions B and 11 likewise are similar.  However, Instruction 11 too narrowly constricts direct evidence, providing a narrow example (a statement that the defendant intended to discriminate against the plaintiff or his racial group), which would lead the jury to believe that is the only way to prove direct intent.  Direct evidence would also include references in the record to race, and disparate treatment of members of Plaintiff's same ethnic group.[11]

Instructions C and 12 parallel each other.  But once again, Instruction 12 too narrowly constricts circumstantial or indirect evidence, and merely gives an example of indirect evidence without providing a definition.  Instruction C, to the contrary, provides a definition of indirect evidence, consistent with the caselaw.[12]

Instructions D, E and F sets forth the <u>McDonnell Douglas</u>[13] presumption.  Defendant is likely to argue that it is not appropriate to tell the jury about this presumption or inference. –
However, as recognized by the Third Circuit in <u>Smith v Borough of Wilkinsburg</u>,[14]:

---

[10]McDonnell Douglas v. Green, 411 U.S. 792, 802-804 (1973); Love-Lane v. Martin, 355 F. 3d 766, 786 (4th Cir. 2004); Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999); Hill v. Lockheed Martin Logistics Mgmt, 354 F. 3d 277, 287 (4th Cir. 2004); Jordan v. Alternative Resources Corp., 458 F. 3d 332, 345 (4th Cir. 2006); Diamond v. Colonial Life & Acc. Ins. Co., 416 F. 3d 310, 318 (4th Cir. 2005).
[11]Williams v. Lindenwood Univ., 288 F.3d 349, 356 (8th Cir. 2002)
[12]McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973); Tex. Dep't of County Affairs v. Burdine, 450 U.S. 248, 253 (1981); Hill v. Lockheed Martin Logistics Mgmt, 354 F. 3d 277, 287 (4th Cir. 2004); Diamond v. Colonial Life & Acc. Ins. Co., 416 F. 3d 310, 318 (4th Cir. 2005); Hawkins v. PepsiCo, Inc., 203 F. 3d 274, 278 (4th Cir. 2000).
[13]411 US 792, 802-804 (1973); Flowers v. Crouch-Walker Corp., 552 F.2d 1277, 1281-84 (7th Cir. 1977); Hill v. Lockheed Martin Logistics Mgmt, 354 F. 3d 277, 286 (4th Cir. 2004); Diamond v. Colonial Life & Acc. Ins. Co., 416 F. 3d 310, 318 (4th Cir. 2005); Hawkins v. PepsiCo, Inc., 203 F. 3d 274, 278 (4th Cir. 2000); Love-Lane v. Martin, 355 F. 3d 766, 788 (4th Cir. 2004).
[14]147 F.3d 272 (3rd Cir. 1998)

> Accordingly, we join the Second Circuit in holding that the jurors must be instructed that they are entitled to infer, but need not, that the plaintiff's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision.[15]

While the Third Circuit, in a footnote, subsequently narrowed the holding in Smith, it did not eliminate it, merely recognizing, as the court in Smith did, that the subtleties of the McDonnell Douglas burden shifting should not necessarily be given to the jury.[16]

Defendant's likely argument that the presumption is applicable only for summary judgment and the jury should not be advised of the presumption, is not found in McDonnell Douglas.

Even should the Court agrees with Defendant and decides not to provide the presumption instruction, the court should provide instead a mixed motive discrimination instruction, as set out in Desert Palace, Inc. v Costa.[17]  In Desert Palace, the trial court instructed the jury:

> You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex and also by other lawful reasons. If you find that the plaintiff's sex was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason.
>
> However, if you find that the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the plaintiff is entitled to damages. The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the plaintiff's gender had played no role in the employment

---

[15] Id. at 280.
[16] Pivirotto v Innovative Systems, Inc., 191 F.3d 344, 348 n. 1 (3rd Cir. 1999)
[17] 539 US 90, 91 (2003)

10

decision.[18]

The Desert Palace court upheld this instruction.  Thus, if the Court does not give the jury

Instruction D, it should alternatively give an instruction modeled after Desert Palace, a version

of which is attached hereto as Exhibit 1.

Instruction K would only be given if the Court makes a determination that a prima facie

case had been made.  Such a determination is an issue of law for the Court to determine.[19]

**Plaintiff's Jury Instruction L**

Instruction L sets forth the elements and respective burdens of proof of the parties.

The parties have addressed the respective burdens of proof and elements in other disputed

Instructions, and the Court's rulings on those Instructions will dictate whether Instruction L

properly advises the jury of the law in this matter.

**Plaintiff's Jury Instructions M and N / Defendant's Jury Instructions 13, 14 and 16**

Plaintiff has proposed two alternate proposed jury instructions for punitive damages.

Instruction M is derived from the guideposts set forth in the United States Supreme Court

cases of TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 459-462 (1993); Smith v.

Wade, 461 U.S. 30 (1983); Pacific Milt. Life Ins. Co. v. Haslip, 499 U.S. 1, 15-20 (1991);

BMW of North America, Inc. v. Gore, Jr., 517 U.S. 559 (May 1996); and State Farm Mutual

Automobile Insurance Company v. Campbell, 123 S. Ct. 1513; 155 L. Ed. 2d 585 (2003).

Instruction N is meant specifically for § 1981 cases and is drawn almost word-for-word

from Judge Sand's *Modern Federal Jury Instructions*, Instruction 87-23. Either proposed jury

instruction is acceptable to Plaintiff.

---

[18] Id. at 96
[19] Pivirotto, 191 F.3d at 348 n 1.

11

Instead of accepting Judge Sands' proposed jury instruction, which model Defendant has used for more than half of its proposed jury instructions, Defendant has proposed the most anti-punitive-award language it could possibly find. For example, here is the simple two-sentence standard for awarding punitive as articulated by Judge Sand:

> To make such a judgment it is important to understand the reasons for awarding punitive damages: to punish the defendant for malicious conduct against the plaintiff or for callous disregard of plaintiff's rights and to deter future such conduct by the defendant or others like him.  Thus, you should consider whether the award of punitive damages will accomplish these dual purposes of punishment and deterrence.

Leonard B. Sand, et al, *Modern Federal Jury Instructions - Civil*, § 87-23 (Matthew Bender & Co 2014). Judge Sand's version includes a number of qualifications, but that is basically the entire instruction – it's so simple anyone can understand it. If something more detailed is required, Plaintiff's proposed Instruction M breaks out all of the factors and lets the jury decide whether they apply.

In contrast, Defendant has proposed three instructions (Disputed Instructions 13, 14, and 16), which it has lifted from Ninth Circuit Federal Pattern Jury Instruction No. 5.5. But Defendant's proposed instructions do not (a) match the law in this Circuit, (b) was not intended for a § 1981 case like this, (c) and does not match the facts of this case.  The standard in this Circuit can be found in *Lowery v. Circuit City Stores, Inc.*: "A prevailing plaintiff in a cause of action under § 1981 is entitled under the current law to punitive damages under certain circumstances, specifically, for conduct by the defendant exhibiting malice, an evil motive, or recklessness or callous indifference to a federally protected right." *Id*. at 441 (internal citations omitted).

12

But Defendant seeks to instruct the jury about "ill will," "spite," "complete indifference to the plaintiff's safety or rights" – none of which appear in the Fourth Circuit case law.[20] Then Defendant seeks to instruct the jury about "unnecessary harshness or severity, such as the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff." Again, this standard does not appear in *Lowery* or *Matarese*.

The Ninth Circuit jury instruction may seem particularly applicable to employment-law situations under Title VII or police brutality. For example, there is discussion of "the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff." One could easily imagine this jury instruction applying to a false arrest claim or an unnecessary force claim. But this instruction has little to do with the decision here by Southwest not to reboard two South Asian passengers because they were "Middle Eastern looking."   In the comments to Ninth Circuit Federal PJI No. 5.5, the Ninth Circuit specifically refers to Title VII and § 1983 claims, and no discussion appears about § 1981 claims. Thus, the Ninth Circuit apparently did not intend for the instruction to cover all civil rights cases.  Instructions M and/or N are more tailored to the caselaw of this Circuit and this case.

**Plaintiff's Jury Instruction R / Defendant's Jury Instruction 15**

Instruction R sets forth the basis for holding a corporation liable for punitive damages. These bases include if the corporation authorized the doing and manner of the act; if a managerial employee acted within the scope of his employment; or if the corporation ratified or

---

[20] See Id. at 441; Matarese v. Archstone Pentagon City, 795 F.Supp.2d 402, 449 (E.D.Va. 2011), aff'd in part and vacated in part on other grounds, 468 F.App'x 283 (4th Cir. 2012).

13

approved the act.[21]  Defendant would withhold from the jury the first basis, and provide only a

bare bones explanation.  Instruction R is modeled after the Illinois Model Jury instruction, and

not plucked out of thin air, as Instruction 15 appears to be.

**Plaintiff's Jury Instruction Q/Defendant's Jury Instruction 17.**

Instructions Q and 17 both advise the jury of the duty to deliberate.  The difference

between Plaintiff's instruction Q and Defendant's Instruction 17 is in the first paragraph,

advising the jury of the respective burdens of proof.  The parties have addressed the respective

burdens of proof in other disputed Instructions, and the Court's rulings on those Instructions will

dictate whether Instruction Q or Instruction 17 properly advises the jury of the law in this matter.


CHIRAG SHAH
By Counsel


_____/s/_____
Thomas R. Breeden, VSB # 33410
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, Virginia 20109
Tel (703) 361-9277, facsimile (703) 257-2259
trb@tbreedenlaw.com

---

[21]Adapted from Illinois Model Jury Instruction No. 35.02, available at
http://www.state.il.us/court/circuitcourt/civiljuryinstructions/35.00.pdf at 6-7, which
is based on the requirements of Restatement (Second) of Torts, § 909, and the
Restatement (Second) of Agency, § 217C. The Fourth Circuit has adopted
Restatement (Second) of Torts, § 909, for cases brought under § 1981. See, e.g.,
Bryant v. Aiken Regional Medical Centers, Inc., 333 F.3d 536, 548 n. 4 (4th Cir.
2003); Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 442 (4th Cir. 2000).

Sanjay Sethi
Sethi & Mazaheri, LLC
9 Polifly Road, 2nd Floor
Hackensack, NJ  07601
201-606-2267
Facsimile 201-595-0957
sethi@sethimaz.com


Brian L. Bromberg
Jonathan R. Miller
brian@brianbromberglawoffice.com
Bromberg Law Office, PC
26 Broadway, 21st Floor
New York, NY 10004
Tel (212) 248-7906 Fax (212) 248-7908
*Counsel for Plaintiff*


## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd  day of September, 2014, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF)

to the following:


Jonathan M. Stern (VSB# 41930)
Schnader Harrison Segal & Lewis LLP
750 Ninth Street, NW
Suite 550
Washington, DC  20001
(202) 419-4202
(202) 419-4252 fax
jstern@schnader.com
*Counsel for Defendant*

_____/s/_____
Thomas R. Breeden, Esquire
(VSB #33410)
THOMAS R. BREEDEN, P.C.
7900 Sudley Road, Suite 600
Manassas, Virginia  20109
(703) 361-9277 Telephone
(703) 257-2259 Facsimile
trb@tbreedenlaw.com
*Counsel for Plaintiff*