IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CHIRAG SHAH, | \| |
| Plaintiff, | \| |
| vs. | \|  Civil Action No. 1:13CV1481 AJT/JFA |
| SOUTHWEST AIRLINES, *et al.*, | \| |
| Defendants. | \| |

## SOUTHWEST'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Southwest Airlines Co. hereby objects for the following reasons to plaintiff's disputed proposed instructions and incorporates by reference the citations of authority set forth in its proposed disputed instructions.[1]

### I. PLAINTIFF'S PROPOSED SECTION 44902(b) IMMUNITY INSTRUCTIONS SUFFER FROM SEVERAL FLAWS

Plaintiff's disputed section 44902(b) immunity instructions — disputed instructions nos. G-K — suffer from fundamental flaws and so should not be charged to the jury.

#### a. Disputed Instruction No. G – 49 U.S.C. [§] 44902(b)

Plaintiff's disputed instruction no. G would place on Southwest "the burden of proving, by a preponderance of the evidence, that it made a determination that Chirag Shah was inimical to safety." Once Southwest made this showing, the instruction would tell the jury that the burden shifts to plaintiff to show that the determination was "arbitrary and capricious, not reasonable and rational." This instruction is fundamentally flawed for four reasons.

---

[1] Plaintiff has attached a new instruction, "Jury Instruction S," as Exhibit 1 to his objections to Southwest's jury instructions. Because plaintiff did not earlier make this instruction available to Southwest, this brief does not address Instruction S. Southwest anticipates filing a supplemental objection to plaintiff's new disputed instruction.

First, the instruction is a transparent attempt to stack the deck in plaintiff's favor by omitting from section 44902(b) the statutory language that forms the foundation of Southwest's case. The instruction would require Southwest to prove that plaintiff "was inimical to safety." But the statute provides that an air carrier has discretion to decline to transport a passenger who "is, **or might be**, inimical to safety." (emphasis added).[2] By omitting that the statute specifically provides air carriers with discretion to deny transport to someone who "might be" inimical to safety, plaintiff's instruction misstates that law.

Second, the instruction would require Southwest to prove "by a preponderance of the evidence" that the statute applies. There is no such requirement in the statute or interpreting case law. The statute is not, as the plaintiff asserts, a mere affirmative defense, but rather "an affirmative grant of permission to the air carrier" to deny transport.[3] Accordingly, "[i]t is the plaintiff who carries the burden to show that § 44902(b) is inapplicable."[4] Once the statute is implicated — as it clearly is here — the case law is clear that Mr. Shah has the burden to prove by a preponderance of the evidence that the decision to decline him transport was arbitrary and capricious.[5]

Third, the instruction attempts to incorporate a "reasonable and rational" standard. The correct standard is arbitrary or capricious, not reasonable and rational.[6]

---

[2] 49 U.S.C. § 44902(b) provides in full: "Permissive Refusal. — Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."
[3] *Cerqueira v. Am. Airlines Inc.*, 520 F.3d 1, 13-14 (1st Cir. 2008)
[4] *Id.* at 14. In the context of this case, this requires no searching factual inquiry and can easily be made by the Court prior to submitting the case to the jury.
[5] *E.g.*, *Cerqueira*, 520 F.3d at 13-14; *Hammond v. Northwest Airlines*, No. 09-12331, 2010 U.S. Dist. LEXIS 72007, at *13 (E.D. Mich. July 19, 2010); *Al-Watan v. Am. Airlines, Inc.*, 658 F. Supp. 2d 816, 824, 826 (E.D. Mich. 2009).
[6] *See Cerqueira,* 520 F.3d at 14 ("Congress left decisions to refuse passage to the air carrier, and any review in the courts is limited to review for arbitrariness or capriciousness."); *Al-Qudhai'een v. Am. W. Airlines, Inc.,* 267 F. Supp. 2d 841, 846 (S.D. Ohio 2003) (recognizing that, pursuant to § 44902(a), an air carrier's refusal to transport "cannot give rise to a claim for damages under either

...Continued

Fourth, the vast majority of the case law frames the plaintiff's burden as proving that the denial of transport was arbitrary or capricious, not that the determination of potential inimicality was arbitrary or capricious.[7] Viewed in this way, the context in which the decision is made appropriately is broader, which is consistent with the Fourth Circuit's decision in *Smith v. Comair*, 134 F.3d 254, 258 (4th Cir 1988), where the court noted that the law "appropriately grants airlines latitude in making decisions necessary to safeguard passengers from potential security threats." Plaintiff's disputed instruction no. G has no place in this trial.

### b. Disputed Instruction No. H – Definition of Inimical

Plaintiff's proffered definition of "inimical" is similar to that cited by Southwest in its disputed instruction no. 6. But immediately after defining "inimical," the plaintiff would then have this Court instruct the jury on a burden the airline does not have. It is the plaintiff's burden to demonstrate that section 44902(b) does not apply, not Southwest's burden to demonstrate that it does.[8]

---

*Continued from previous page*
federal or [state] law unless the carrier's decision was arbitrary or capricious"); *Christel v. AMR Corp.*, 222 F. Supp. 2d 335, 340 (E.D.N.Y. 2002) (same).
[7] *E.g., Cerqueira v. Am. Airlines, Inc.*, 520 F.3d 1, 14 (1st Cir. 2008) (explaining that the courts evaluate "whether a decision to refuse transport is arbitrary or capricious"); *Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir. 1975) ("TWA['s] action in refusing to carry Williams on the flight for which he had a ticket … was not arbitrary"); *Adams v. US Airways Group, Inc.*, 978 F. Supp. 2d 485, 495 (E.D. Pa. 2013) ("On review, courts have generally looked to whether the decision to refuse passage was arbitrary or capricious."); *Al-Watan v. Am. Airlines, Inc.*, 658 F. Supp. 2d 816, 822 ( E.D. Mich. 2009) ("The issues are, thus, two-fold: first, was the Captain's decision to return to the gate arbitrary and capricious…."); *Dasrath v. Continental Airlines, Inc.*, 467 F. Supp. 2d 431, 434 (D.N.J. 2006) ("A refusal to transport a passenger who an air carrier believes might be inimical to safety can give rise to a claim only if the carrier's decision was arbitrary and capricious."); *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391 (S.D.N.Y. 2004) ("Since the undisputed record demonstrates that Captain Coffey made the decision to remove Plaintiff from the plane, based on reports made to him about her behavior by other airline employees, his decision was not arbitrary and capricious as a matter of law.").
[8] *Cerqueira*, 520 F.3d at 14.

Plaintiff also adds "safety of the aircraft" into the instruction. This limitation is not in the statute and so should not be included in an instruction to the jury. The statute is open ended and could include safety of crew, passengers, cargo, the airplane, and persons and property on the ground.

### c. Disputed Instruction No. I – Definition of Arbitrary and Capricious

Plaintiff resorts to an old edition of *Black's Law Dictionary* to define "arbitrary and capricious" in the context of an air carrier's decision to deny a passenger transport.[9] But no such general definition is needed. Southwest has offered to the court in its disputed instruction no. 6 a definition for arbitrary and capricious that is a direct quotation from circuit court case law addressing the specific context of this case.[10]

Plaintiff's definition would also add to juror confusion. The definition would improperly incorporate a negligence standard — "unreasonable" — into this case and arguably introduce a requirement on the part of Captain Cannon to investigate. There is no such requirement.[11]

Plaintiff also cites a definition for "arbitrary" from the current edition of *Black's Law Dictionary* in the footer of the proposed instruction but misquotes the definition to say: "(Of a **legal** decision) founded on prejudice or preference rather than on reason or fact." (emphasis added). The definition provides: "(Of a **judicial** decision) …." (emphasis added). Plaintiff's proffered definition

---

[9] *See, e.g.*, *V.I. Conservation Soc. v. V.I. Bd. of Land Use Appeals*, No. 1987/334, 1988 U.S. Dist. LEXIS 9801, at *4 (D.V.I.) (referring to same definition as that offered by plaintiff and citing *Black's Law Dictionary* 96 (5th ed. 1979)).

[10] *See Cerqueira*, 520 F.3d at 14 n.7 (holding that a decision is arbitrary and capricious only if it is "totally devoid of reason").

[11] *E.g.*, *Cerqueira*, 520 F.3d at 14; *Williams*, 509 F.2d at 948; *Lozada*, 2014 U.S. Dist. LEXIS 82441, at *16-*17; Jury Charge, *Haider v. Am. West Airlines*, No. 06 CV 1128 RWT (D. Md. 2008), ECF No. 44, at 1 (available on PACER) ("There is no obligation under this section to make a thorough inquiry into the information received, the sources of that information, or to engage in an investigation."); *Ruta v. Delta Air Lines, Inc.*, 322 F. Supp. 2d 391, 397-98 (S.D.N.Y. 2004); *Christel*, 222 F. Supp. 2d at 340.

therefore refers to review of judicial decisions, such as in the administrative law context. The definition on which Southwest relies in its disputed instruction no.6, which is context-specific, is therefore superior to those offered by plaintiff.

### d. Disputed Instruction No. J – State of Mind of the Decision-maker

Plaintiff again asks this Court in disputed instruction J to tell the jury that Southwest has the burden to demonstrate that section 44902(b) applies. As earlier discussed, plaintiff has the burden to demonstrate that section 44902(b) immunity does not apply.[12] In the context of this case, where section 44902(b) clearly is implicated, the court may make this determination before submitting the case to the jury.

Plaintiff's proffered instruction also is flawed because it would tell the jurors to decide whether Captain Cannon's decision was arbitrary and capricious, "based on the facts *available* to Captain Cannon." (emphasis added). The case law is clear that a captain's decision must be evaluated based on the information he actually possessed when he made the decision, not based on all facts available.[13] Relatedly, this aspect of plaintiff's proffered instruction would invite the jury to fault Captain Cannon for not conducting an investigation to gather all available information. Captain Cannon was under no such requirement; it would be erroneous to instruct the jury otherwise.[14]

---

[12] *Cerqueira*, 520 F.3d at 14.

[13] *E.g.*, *Id.*; *Lozada v. Delta Airlines, Inc.*, No. 13 Civ. 7388 (JPO), 2014 U.S. Dist. LEXIS 82441, at *16 (S.D.N.Y. June 17, 2014); *Christel*, 222 F. Supp. 2d at 340; *Al-Qudhai'een*, 267 F. Supp. 2d at 847 (S.D. Ohio 2003); Jury Charge, *Haider v. Am. West Airlines*, No. 06 CV 1128 RWT (D. Md. 2008), ECF No. 44, at 1 (available on PACER) ("In considering the decision to deny transport to a passenger, you must restrict yourself to what information was actually known by the decision maker at the time of the decision, and not what should have been known.").

[14] *E.g.*, *Cerqueira*, 520 F.3d at 14; *Williams*, 509 F.2d at 948; *Lozada*, 2014 U.S. Dist. LEXIS 82441, at *16-*17; Jury Charge, *Haider v. Am. West Airlines*, No. 06 CV 1128 RWT (D. Md. 2008), ECF No. 44, at 1 (available on PACER) ("There is no obligation under this section to make a thorough inquiry into the information received, the sources of that information, or to engage in an

*…Continued*

* * * * *

Taken together, Southwest's disputed instruction no. 6 is superior to plaintiff's 44902(b) instructions. Southwest's instruction relies on the statutory language and several cases interpreting the statute to provide to the jury a clear narrative of the established law.

## II.   INSTRUCTIONS ON *MCDONNELL DOUGLAS* BURDEN SHIFTING ARE NOT APPROPRIATE

Plaintiff asks the Court to provide to the jury several instructions relating to *McDonnell Douglas* burden shifting, referring, for example, to the term "*prima facie*" no fewer than 11 times in his disputed instructions. As next discussed, *McDonnell Douglas* has no application in a section 44902(b) case. Even if it did, it would be error to charge the jury on the *McDonnell Douglas* framework. So the *McDonnell Douglas* burden-shifting framework, and plaintiff's instructions C-F and K that incorporate that framework, should play no role in this trial.

### a.   *The McDonnell Douglas* Framework Has No Application Here

The determination of whether the captain's removal decision was arbitrary or capricious is not subject to the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). As held by the First Circuit, *McDonnell Douglas* burden shifting is inconsistent with section 44902(b):

> This claim, however, is not an employment discrimination claim arising under Title VII; it arose under § 1981 and challenged a decision made pursuant to the authorization given an air carrier by Congress in § 44902(b). As we have held, the burden is on the plaintiff to show the decision not to transport was arbitrary or capricious…. The jury must be instructed that the Captain has the power to refuse transport because transport of a passenger "might be" inimical to safety unless that decision was arbitrary or capricious…. It is the plaintiff's burden to show the Captain's decision was arbitrary or capricious. The test we have outlined under § 44902(b) is

---

*Continued from previous page*
investigation."); *Ruta v. Delta Air Lines, Inc.*, 322 F. Supp. 2d 391, 397-98 (S.D.N.Y. 2004); *Christel*, 222 F. Supp. 2d at 340.

inconsistent with the use in Title VII cases of prima facie case methodology and the burden-shifting test.

520 F.3d at 18 (footnotes and citations omitted). Subsequent decisions from other courts have followed this rule.[15] *McDonnell Douglas* burden shifting is simply inapplicable.

### b. Even if *McDonnell Douglas* Applies, It Is Error To Instruct the Jury on Burden Shifting.

Assuming that *McDonnell Douglas* burden-shifting plays a role in this case (it does not), it would do so before the case is submitted to the jury. Burden shifting is a question for the court, such as in the context a motion for summary judgment or a motion for judgment as a matter of law.[16] Once those respective determinations are made, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proved that the defendant intentionally discriminated against him because of his race."[17] Plaintiff's burden-shifting instructions are therefore inappropriate.

Moreover, plaintiff's focus on his *prima facie* case, shifting burdens, and pretext will only serve to confuse the jury and distract it from answering the ultimate question. As the Fourth Circuit has recognized, "*McDonnell Douglas* was not written as a prospective jury charge; to read its technical aspects to a jury … will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to sieve upon poorly understood

---

[15] *E.g., Hammond,* 2010 U.S. Dist. LEXIS 72007, at *13; *Al-Watan,* 658 F. Supp. 2d at 824, 826.
[16] *See, e.g.*, *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) ("The *McDonnell Douglas* test is used on summary judgment, not at trial."); *cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993) (holding that "the burden-of-production determination *precedes* the credibility-assessment stage"); *Nelson v. Green Ford, Inc.*, 788 F.2d 205, 208 (4th Cir. 1986) ("The lack of the need for the jurors to hear anything about *McDonnell Douglas v. Green* is underscored by the connection between the purely legal mechanism of the *prima facie* case and the associated factual inference of liability.").
[17] *St. Mary's Honor Ctr.*, 509 U.S. at 509-10 (internal quotations omitted)). In the rare situation where a party fails to meet its burden of production, *and* survives summary judgment or a judgment as a matter of law, a carefully-tailored jury instruction as to one of the parties' burdens may be warranted. *Id.* Plaintiff offers no such instruction. If one is needed, the parties may offer it through supplemental proposed instructions as provided in the Court's August 20, 2014 Order.

legalisms to decide the ultimate question of discrimination."[18] Accordingly, "[i]nstructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing."[19] Other circuits agree that "[i]t is error[, as the plaintiff would have the Court do,] to charge the jury with the elements of the *McDonnell Douglas* prima facie case."[20] These instructions have no role to play in the jury room.

### c. Objections to Specific *McDonnell* Douglas-Based Instructions

In addition to these global objections to plaintiff's burden-shifting instructions, the instructions also individually contain significant errors.

i. <u>Disputed Instruction No. E</u>: Plaintiff requests that the Court instruct the jury that "[o]nce Mr. Shah has established a *prima facie* case of discrimination, … Southwest Airlines has the burden of proving, by a preponderance of the evidence, that the adverse actions were taken for a legitimate nondiscriminatory reason." This is a misstatement of the law. Assuming that *McDonnell Douglas* burden-shifting applies in this case, Southwest's burden would be a burden of production — not a burden by the preponderance of the evidence. As held by the Supreme Court:

> [After the plaintiff establishes his prima facie case,] the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case — *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. … It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, the ultimate burden of persuading the trier of fact that the defendant

---

[18] *Nelson v. Green Ford, Inc.*, 788 F.2d 205, 207 (4th Cir. 1986) (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1016 (1st Cir. 1979)); *see also See Smith v. Univ. of N.C.*, 632 F.2d 316, 334 (4th Cir. 1980).
[19] *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, n.1 (3rd Cir.1999) (quotation omitted).
[20] *Sanghvi v. City of Claremont*, 328 F.3d 532, 540 (9th Cir. 2003); *see also Nelson*, 788 at 207 ("[T]he term '*prima facie* case' need never be mentioned to the jurors.") (quotation omitted); *Ryther v. KARE*11, 108 F.3d 832 (8th Cir. 1997); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992); *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 85 (2d Cir. 1983) ("proposed instructions, couched in such lawyerly cant as '*prima facie* case' and 'shifting burden of proof,' would only have confused the jury").

> intentionally discrimination against the plaintiff remains at all times with the plaintiff.

*See St. Mary's Honor Ctr.*, 509 U.S. at 506-07 (internal quotations and citations omitted). Southwest never has the burden under *McDonnell Douglas* to prove a nondiscriminatory reason for its actions by a preponderance of the evidence, so plaintiff's proposed instruction is erroneous. In conflating the burden of production with the burden of persuasion, plaintiff illustrates the complexity of the burden-shifting scheme and hints at the confusion that can result from charging the jury with burden-shifting instructions.

    ii. <u>Disputed Instruction No. K:</u> Plaintiff seeks an instruction that "[t]he Court has determined, as a matter of law, that Chirag Shah has made a *prima facie* showing of discrimination by Defendant." Although the Court denied Southwest's motion for summary judgment through an oral order, there is nothing in the record demonstrating that the Court determined that *McDonnell Douglas* applies to this case (it does not). The record reflects that the Court found the question of Section 44902(b) inherently factual and denied the motion on that basis. Moreover, such an instruction would be inappropriate even if the Court actually had decided that plaintiff had made a prima facie showing.

## III. SCOPE OF SECTION 1981

  In his disputed instructions nos. A, B, and D, plaintiff states that section 1981 applies to claims of discrimination based on "national origin." It does not.[21] So any reference to national origin is misleading and inappropriate.

---

[21] *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Torgerson v. Rochester*, 643 F.3d 1031, 1053 (8th Cir. 2011) ("Section 1981 does not authorize discrimination claims based on national origin.").

IV.    PUNITIVE DAMAGES

Plaintiff's proffered punitive damages instructions are disputed instructions M, N, P, and R. While Southwest's objections to the individual instructions are next discussed, Southwest objects to the lack of any mention in plaintiff's proffered instructions to the good-faith defense to punitive damages. As Southwest provided in its disputed instruction no. 8, which quotes the Third Circuit's Pattern Instruction and cites to controlling case law, punitive damages may not be awarded against Southwest if it made a good-faith attempt to comply with the law by adopting policies and procedures designed to prevent unlawful discrimination.[22] So a punitive damages charge to the jury must include this defense.

a. Disputed Instruction M – Punitive Damages, and Instruction N – Punitive Damages-Alternative Instruction

Plaintiff's punitive damages instruction No. M misstates federal law.  It would tell the jurors that, if they find that "Southwest Airlines should have known … that it would or could violate Mr. Shah's legally protected rights," then the jury may award punitive damages. Plaintiff is attempting to incorporate negligence standards into the punitive damages instructions. This he cannot do.

The definition for "malice and evil motive, or recklessness and callous indifference to a federally protected right," which Southwest relied on in its disputed instruction no. 14, is well-settled.[23] Contrary to the negligence-based standards plaintiff seeks to utilize, he must prove that Southwest employees "at least discriminate[d] in the face of a perceived risk that its actions will

---

[22] *See* Third Circuit Pattern Jury Instructions – Civil, No. 6.4.2 (Matthew Bender & Co. 2014); *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 536, 542-46 (1999); *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441-42 (4th Cir. 2000); *Williams v. Cloverleaf Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 487 (D. Md. 1999).
[23] *Lowery*, 206 F.3d at 441.

violate federal law to be liable in punitive damages."[24] Relatedly, instruction N is insufficient because it does not define "recklessness and callous indifference to a federally protected right."

The factors plaintiff lists in instruction M for the jury to consider in determining the amount of damages are also flawed. Plaintiff asks this Court to instruct the jury that, "[i]n determining the amount of punitive damages to award," it may consider "the magnitude of any potential harm to other victims if similar future behavior is not deterred." But the Supreme Court has rejected this consideration as a measure of punitive damages.[25] Plaintiff also wants the jury to consider the "the costs of litigation" in calculating punitive damages. Such a consideration is inappropriate because section 1981 contains a fee-shifting provision.

> b. Disputed Instruction No. P – Managerial Capacity

Plaintiff's definition of managerial capacity starts in promising fashion, but incrementally expands the definition with examples of "lesser forms of discipline" such as "putting crewmembers on another flight or overruling crewmembers' decisions." Plaintiff's examples of lesser forms of discipline would expand the managerial-capacity concept to new bounds.[26] The examples are simply inconsistent with the Supreme Court's holding in *Kolstad* that a managerial employee "must be important but perhaps not be the employer's top management, officers or directors."[27] This problem is exacerbated by plaintiff's use of the disjunctive "or" instead of the conjunctive "and" between "authority to hire and fire" and the authority to "impose lesser forms of

---

[24] *Id.* (quoting *Kolstad*, 527 U.S. at 536).
[25] *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (U.S. 2007) (holding that the Due Process Clause forbids considerations of harm to those "who are, essentially, strangers to the litigation" in computing the amount of punitive damages to award).
[26] By way of example, the decisionmaker in *Lowery*, an opinion cited by plaintiff to support his instruction, "managed the entire department responsible for recruiting potential employees to fill non-managerial positions" at the company and could hire people "in her sole discretion without first consulting her boss." 206 F.3d at 444.
[27] 527 U.S. at 510.

discipline." It is also worth noting that one federal court has twice held that a pilot is not a managerial employee.[28]

Southwest's definition of managerial capacity (disputed instruction no. 7), on the other hand, quotes and is well-grounded in controlling law.

### c. Disputed Instruction No. R – Punitive Damages – Corporate Defendant's Liability

Instruction R would tell the jury that punitive damages may be awarded as to "acts or omissions" on the part of Southwest. There are no "omissions" at issue that could, as a matter of law, entitled plaintiff to punitive damages, so any such mention would merely confuse the jury. The instruction is also confusing and misleading. It is entirely unclear from the instruction that the jury must first find that the act in question was reckless or in conscious disregard for a federally protected right before then determining whether the act should be imputed to Southwest for the purpose of punitive damages.

## V. OBJECTIONS TO DISCRETE INSTRUCTIONS

### a. Disputed Instruction No. A - Discriminatory Intent

Plaintiff seeks an instruction telling the jury that he "need not prove that Southwest Airlines' employees acted out of conscious racial intent because the prohibition on discrimination extends to decisions that are based on stereotyped thinking and other forms of less conscious bias." This instruction is not supported by the case law plaintiff cites.[29] Indeed, "§ 1981 provide[s] a

---

[28] *See Shackelford v. P.R. Int'l Airlines, Inc.*, 16 Av. Cas. (CCH) P17,259, 16 V.I. 342, 1979 U.S. Dist. LEXIS 11512, at *7-8 (D.V.I. 1979); *Tyler v. Am. Airlines*¸ No. 76-369 (D.V.I.) (citing in *Shackelford*).
[29] *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 42 (1st Cir. 1999), relied on by the plaintiff to support the disputed instruction, references stereotyped thinking and other forms of less conscious bias, but does so in the context of Title VII, not section 1981.

private cause of action for intention discrimination only."[30] This is evident from *Jordan v. Alternative Resources Corp.*, 458 F.3d 332 (4th Cir. 2006), a case plaintiff relied on to support his instruction, in which the Fourth Circuit held that for a section 1981 claim to survive a motion to dismiss, the plaintiff must allege that "defendants' termination of his employment was because of his race; and that their discrimination was intentional."[31]

Southwest's disputed instruction 10 is preferable. It is a model instruction that avoids these pitfalls.

### b. Disputed Instruction No. B - Direct Evidence of Discrimination

The instruction misstates what constitutes direct evidence of discrimination. "[D]irect evidence, if believed by the trier of fact, will prove the particular fact in question *without reliance on inference or presumption*."[32] So the statement, "I fired Judy because she is an old woman," constitutes direct evidence of discrimination.[33]

Plaintiff would have the Court instruct the jury that "evidence that other individuals from the same or similar race, color, national origin, ethnicity, or ancestry as Mr. Shah were removed from Flight 392 also constitutes direct evidence of discrimination." That evidence requires the factfinder to infer that both passengers were removed from the flight because of their race, and

---

[30] *Pryor v. NCAA*, 288 F.3d 548, 562 (3d Cir. 2002); *see also Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (holding that to prevail on a section 1981 claim, the plaintiff must establish "that the defendant intended to discriminate on the basis of race").
[31] *Id.* at 345 (emphasis omitted).
[32] *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563 569-70 (7th Cir. 1989) (emphasis added).
[33] *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("The classic example of direct evidence of discrimination comes from *Trans World Airlines*, where the Supreme Court held that an explicit, mandatory age requirement was direct evidence of age discrimination. 469 U.S. at 121."); *Davison v. Minneapolis*, 490 F.3d 648, 664 (8th Cir. 2007) (providing examples of direct evidence of discrimination).

not for other reasons.[34] This is not direct evidence of discrimination; there is no such direct evidence in the record. (Additionally, the phrase "similar race" is nonsensical.)

### c. Disputed Instruction No. L – The Verdict

As is evident from Southwest's disputed instruction no. 17, Southwest will submit for the Court's consideration a special verdict form. A special verdict form is warranted under the circumstances of this case because the question of 44902(b) immunity precedes the question of whether Southwest violated section 1981. This is necessarily so because "§ 44902(b) does not merely create a defense: the statute is an affirmative grant of permission to the air carrier."[35] The import of this is that only after determining that an air carrier's decision was arbitrary and capricious may the jury consider the substantive claim asserted by the plaintiff.

Accordingly, if Captain Cannon's decision was not arbitrary and capricious, the juror's deliberations are at an end. Only after determining this question in plaintiff's favor would the jury need to consider whether the decision was an act of intentional discrimination. A general verdict ordered as proposed by plaintiff fails to appreciate this distinction and therefore may lead to juror confusion (as well as deliberation on unnecessary questions).

Moreover, the instruction incorporates plaintiff's earlier misstatements of the law on the burdens of proof. Yet again, plaintiff attempts to place the burden on Southwest to prove "by a preponderance of the evidence[] that its actions were taken for a legitimate nondiscriminatory reason." Assuming that *McDonnell Douglas* burden shifting applies here (it does not), Southwest's burden would be a burden of production, not one of persuasion.[36] And plaintiff again asks this court

---

[34] *Cf. Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("Furthermore, if the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence.").
[35] *Cerqueira*, 520 F.3d at 13-14. The court continued: "Congress specifically authorized permissive refusals by air carriers; Congress did not say § 44902(b) was merely creating a defense." *Id.* at 14.
[36] *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07.

to place on Southwest a preponderance-of-the-evidence burden to prove that section 44902(b) immunity applies. As earlier discussed, it is the plaintiff's burden to prove the section 44902(b) does not apply.[37]

## VI. CONCLUSION

For the foregoing reasons, plaintiff's disputed instructions should not be submitted to the jury. Southwest's disputed instructions, which are well-supported by the relevant case law, will substantially assist the jury during its deliberations.

Dated: September 3, 2014           Respectfully submitted,

                                               SOUTHWEST AIRLINES CO.
                                               By Counsel

By: /s/ *Jonathan M. Stern*
Jonathan Stern (Va. Bar No. 41930)
Aaron Fickes (admitted *pro hac vice*)
Schnader Harrison Segal & Lewis LLP
750 Ninth Street, N.W., Suite 550
Washington, DC 20001-4534
Phone: 202-419-4202
Fax:    202-419-4252
Email: jstern@schnader.com

---

[37] *Cerqueira*, 520 F.3d at 14.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of September 2014, I filed Southwest's Objections to Plaintiff's Proposed Jury Instructions using the Court's ECF filing system, which will provide a copy to:

>Thomas R. Breeden, Esq.
>Thomas R. Breeden, P.C.
>10326 Lomond Drive
>Manassas, Virginia 20109
>Telephone: (703) 361-9277; Telefax: (703) 257-2259
>trb@tbreedenlaw.com

>/s/ *Jonathan M. Stern*
>Jonathan Stern (Va. Bar No. 41930)
>Schnader Harrison Segal & Lewis LLP
>750 Ninth Street, N.W., Suite 550
>Washington, DC 20001-4534
>Phone: 202-419-4202
>Fax:    202-419-4252
>Email: jstern@schnader.com